ARMOUR, (JENKINS v.) See Case No. 7,260.

# Case No. 538.

### ARMROYD et al. v. WILLIAMS et al.[1]

[2 Wash. C. C. 508.][2]

Circuit Court, D. Pennsylvania. April Term, 1811.[3]

RES JUDICATA—DECREE OF FOREIGN COURT OF ADMIRALTY—PRIZE.

1. The schooner Fortitude, owned by the appellees, citizens of the United States, and merchants resident at New-London. on her return voyage from Martinico, a British island, having on board part of her outward cargo, and the remaining portion of her loading having been shipped at Martinico, was captured as prize by a French privateer, carried to St. Martin's, where the vessel and cargo were sold by order of the governor, and part of the latter sent by the purchaser to the appellants in Philadelphia. The Fortitude and cargo were afterwards condemned by a French court of prize, sitting at Guadaloupe, for an asserted violation if the Milan decree, in trading with a British colony.

2. The sentence of a court of exclusive jurisdiction, operating directly on the thing itself, is conclusive between the same parties, upon the same matter coming in any manner before another court of co-ordinate jurisdiction, not only of the right which it establishes, but of the fact which it has decided.

[See note at end of case.]

3. So long as the decree of a court of admiralty, foreign or domestic, remains in force, unreversed, it is conclusive to change the property upon which it operates; and the interference of another court of co-ordinate jurisdiction, is not authorized, whether the decree is erroneous or not. The sentence of such a court is not examinable at all, in another court.

[Cited in The Waterloo, Case No. 17,257.]
[See note at end of case.]

4. Whatever may be done by foreign tribunals, in reference to the established principles of the law of nations. relative to the conclusiveness of sentences of foreign prize courts, the courts of the United States will not. for purposes of retaliation. depart from the fixed principles of the law of nations, which declares that they are conclusive.

[Cited in The Waterloo, Case No. 17,257.]
[See note at end of case.]

In admiralty. Appeal from the district court. The schooner Fortitude, belonging to Williams and others, the libellants, citizens of the United States, with a cargo taken in at Martinico, and a part of her outward cargo carried from the United States, sailed on the 20th of August, 1809, from the said island to New-London, consigned to one of the libellants. On the next day, she was captured on the high seas by a French privateer, and carried into St. Martin's. The cargo and vessel were sold, by order of the governor of St. Martin's, at public auction.

---

[1] This cause was argued in January last, and held under advisement.

[2] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States.]

[3] [Reversing an unreported decree of the district court. Affirmed by the supreme court sub nom. Williams v. Armroyd, 7 Cranch, (11 U. S.) 423.]

Ninety-seven hogsheads of molasses, part of the cargo, were sold on the 15th of October, and sent to Philadelphia, consigned to Armroyd & Co., restitution of which was demanded by the libellants, and refused; upon which this libel was filed. The molasses was claimed as the bona fide property of Richardson & Carty, of St. Martin's, and others. The claim states, that at the time of the capture, and before war existed between England and France, the Fortitude, on her return from Martinico, a colony under the dominion of Great Britain, where she had been trading with the enemies of France, contrary to the decrees of France, was captured by a French privateer as prize, carried into St. Martin's, a French possession, and, with her cargo, sold by order of the governor; that the molasses claimed was purchased, bona fide, by certain persons, and afterwards sold by them to those for whom the claim is made; that on the 12th of October, 1809, the court of prize, established at Guadaloupe, a French island, condemned the said schooner Fortitude and her cargo. The sentence of the court at Guadaloupe, after setting forth the purport of the papers of the schooner, proceeds thus:—"It. results from these papers, that the schooner is the property of a citizen of the United States; that she sailed from New-London, bound to Martinico, where she sold her cargo, and took in another cargo for New-London, and therefore she has incurred the penalty pronounced by the Milan decree, dated September 17th, 1807, (which is set out,) and after hearing the opinion of the inspector, &c., we declare the said schooner to have been duly captured, and to be forfeited to the captors. Consequently, she and her cargo are awarded to the captors, to be sold, if the sale has not already taken place," &c.

A pro forma decree having been made by the district court in favour of the libellant, an appeal was prayed to the circuit court.

The points made by Hare and Rawle, counsel for the appellees, were—First, that the foreign sentence, professing to proceed upon the Milan decree, acknowledged to be a violation of the law of nations, is not valid to change the property, and ought to be disregarded. 2 Ersk. Inst. 793; [Burton v. Fitzgerald,] 2 Strange, 1078; 1 Marsh. 397. Second, that the condemnation and sale were fraudulent. Third, that as France disregards the sentences of foreign courts, we are not bound by those of her courts. Id. 391; 1 Emerig. [Ins.] 458; 2 Pet. Adm. 331, [Hollingsworth v. The Betsey, Case No. 6,612.]

Cases cited on the other side: [Bolton v. Gladstone,] 5 East, 155; [Lothian v. Henderson,] 3 Bos. & P. 547; [Croudson v. Leonard,] 4 Cranch, [8 U. S.] 434; [Geyer v. Aguilar,] 7 Term R. 695; [Rose v. Himely,] 4 Cranch, [8 U. S.] 271.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. delivered the opinion of the court. The question is, is the sentence of the prize court at Guadaloupe conclusive to divest the right of the original owners of the property, condemned by that sentence, and to vest it in the purchaser under it? The doctrine of the British courts, acknowledged and adopted by the courts of the United States, is, that the sentence or decree of a court of exclusive jurisdiction, operating directly on the thing itself, is conclusive between the same parties, upon the same matter coming directly or incidentally in question, in another court of co-ordinate jurisdiction, not only of the right which it establishes, but of the fact which it directly decides. This doctrine applies emphatically to the decisions of the courts of admiralty, whether foreign or domestic. They are courts of the law of nations, and to their proceedings all the world are parties; that is, any person having an interest in the thing which forms the subject of the suit, may make himself a party, and contest the right of the libellant. It is the conclusive effect of such a sentence upon the facts decided, which has given rise to the many questions which have perplexed the common law courts of Great Britain and the United States, in respect to warranties of neutrality. If the foreign sentence has proceeded upon ground obviously inconsistent with the neutral rights of the captured, it will be disregarded by the courts of common law, in deciding the question whether the warranty has been falsified; not because the fact which it professes to decide is not conclusively decided by the sentence, but because it concludes nothing in respect to the point at issue—namely, the neutrality of the property, or the neutral conduct of the owner. But as to the direct effect of the sentence upon the thing condemned, no doubt has ever been entertained, that it is conclusive to work a change of the property, so long as that sentence remains in force, unreversed by a superior and appellate tribunal. If the principle be thus general and inflexible, it is unimportant whether the foreign sentence be erroneous or not, or whether the error consist in the mistake of the court in matter of fact, or a misconception of the acknowledged law of nations, or is founded upon foreign laws avowedly repugnant to the law of nations. The validity of the sentence rests upon this ground, that it is not examinable by any other court having a concurrent jurisdiction over the subject; and consequently, the objection is met in limine, before the nature of the error committed can be got at. And in the essence of the thing, where is the difference between a decision obviously unjust, and unwarranted by the facts on which it is founded, or by the acknowledged principles of the law of na-

tions—and one which professes to disregard that law? The injury to the individual is the same, and redress is equally due to him by his own government, the only power competent to redress him. It was contended, that where the foreign court professes to proceed upon a ground not warranted by the law of nations, its decree is not binding on other courts. This, as was before observed, is true, if a conclusive effect is attempted to be given to it, for the establishment of a collateral fact, which the decision does not warrant. But the tribunal itself does not lose its character of a tribunal of the law of nations, because its decisions are repugnant to the law which ought to govern it.

An attempt was made to invalidate this sentence, upon the ground that the agent of the original owners of the vessel and cargo was deprived of an opportunity to put in a claim, and to contest the right of the captors; and also because the sale of the property was unfairly conducted. As to the first objection, the fact upon which it is founded is not very clearly made out. The examination of the master at St. Martha's, which stated the nature of his owner's claim, was before the prize court at Guadaloupe, and was considered; nor does it appear that he was prevented from attending the court, and being heard. But if he had been heard, it is evident that the decision proceeded upon acknowledged facts, and could not possibly have been different from what it was, in a court bound by the edicts of the government which constituted it. The other objection has still less weight in it. The property of the original owners being conclusively changed by the sentence of condemnation, and vested in the captors, it is unimportant, in this suit, whether the sale was regular and bona fide, or not.

The last point insisted upon by the counsel for the appellees, was, that as France does not acknowledge, in her own courts, the conclusive effect of the sentences of foreign prize courts, this court, upon the principle of reciprocity, ought not to regard the decisions of her courts, where they are manifestly wrong. Whether the adoption of the rule of reciprocity, in any case, would be proper or not, need not now be decided. It certainly does not prevail, even in England, in the common law courts; and it has never, to our knowledge, been admitted into the prize courts of our own country. We do not, however, mean to say, that it ought not. In matters of salvage, where the amount of compensation rests in the discretion of the court, and perhaps in other instances, where no moral principle, nor established doctrine of law, would be violated by retaliating upon foreign courts their own rule, there is possibly no other objection to the rule of reciprocity in the admiralty court, except the uncertainty in the law, which the rule is calculated to introduce. But most

certainly, a court which means to act correctly, will never depart from the rule of right, or reverse fixed principles of law, because a foreign tribunal has done so.

The rule of law which governs the court in deciding this case, is, in our opinion, a wise one; and it has appeared otherwise only during a few years past, because the regular order of things has been disturbed and disfigured by the violence and rapine of the belligerents. We confess that we sicken with disgust, in giving to the appellees the benefit of a general principle of law, which compels submission to so daring an outrage upon our neutral rights. But we must obey the law, and leave to our government the task of protecting its citizens.

Sentence reversed.

[NOTE. On appeal to the supreme court, this decree was affirmed: Mr. Chief Justice Marshall holding that, although the sentence of the court at Guadaloupe was "avowedly made under a decree subversive of the law of nations, that will not help the appellants' case in a court which cannot revise, correct, or even examine, that sentence." Williams v. Armroyd, 7 Cranch, (11 U. S.) 423.]